FILED
2011 Sep-23  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, | ) |
| JOHN DOE III, JOHN DOE IV, | ) |
| JOHN DOE V, JOHN DOE VI, | ) |
| JOHN DOE  VII,  JOHN DOE VIII, | ) |
| JANE DOE I, JOHN DOE IX, | ) |
| JANE DOE II, | ) |
| individually and as   Representatives | ) |
| of a class or classes of person | ) |
| more specifically described hereinafter, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF ALABASTER, ALABAMA, | ) |
| CITY OF PELHAM, ALABAMA, | ) |
| CITY OF HOOVER, ALABAMA, | ) |
| CITY OF LEEDS, ALABAMA | ) |
| CITY OF IRONDALE, ALABAMA | ) |
| all municipal corporations organized | ) |
| and existing under the laws of the State | ) |
| Alabama, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Now come the Plaintiffs, individually and as representatives of a class or classes of person consisting of members of the Hispanic community of the subject municipalities, and for complaint against the defendants show unto this Honorable Court the following:

1

I.

<u>INTRODUCTION</u>

1.     This is an action against the named municipalities, acting through their elected officials, police departments and others likewise acting in concert with them, to stop the unconstitutional harassment, search, arrest and trial and punishment of Hispanic immigrant members of this community.

2.     This action also seeks declaratory relief against the subject municipalities declaring that the application of HB-56 that relates to a grant of authority to the subject municipalities nurtures, promotes and condones the continued violation of the 14th Amendment to the Constitution of the United States by the subject municipalities.

3.     Issues involving the constitutionality of HB-56 have been adequately addressed by the Plaintiffs in several cases brought before this Honorable Court, to-wit: in *Hispanic Interest Coalition of Alabama, et al, v. Robert Bentley in his official capacity as Governor of the State of Alabama, et al*, case number 5:11-cv-2484-SLB, *The Rt. Reverend Henry N. Parsley, Jr., in his official capacity as Bishop of the Episcopal Church in the Diocese of Alabama, et al, v. Robert Bentley in his official capacity as Governor of the State of Alabama, et al*, case number 5:11-cv-2736-SLB, and *the United States of America v. the State of Alabama, et al*, case number 5:11-cv-2746-SLB. Accordingly, Plaintiffs do not directly challenge the

constitutionality of HB-56 herein and any reference to it is made in order to establish relevant background for the claims presented herein against the subject municipalities.

4.      The Plaintiffs also seek an order enjoining the police departments of the defendant municipalities from stopping, detaining and demanding identification from members of the Hispanic community under the authority putatively granted them by the Act aforementioned.

5.      They also seek appropriate orders according them fundamental fairness in the application of existing municipal ordinances, rules and regulations to their business and social activities and the invalidation of such ordinances as have been subject to arbitrary and capricious enforcement or which have improperly delegated plenary discretion to officials or departments who or which have demonstrated a discriminatory animus against the Plaintiffs and the members of the class or classes they represent.

6.      Historically, the defendant municipalities have engaged in a pattern, practice, policy, procedure custom or usage pursuant to which members of the Hispanic community have been stopped, detained, directed to produce identification, charged with traffic offenses, arrested and convicted without legal authority and solely on account of race or ethnicity. These activities continue as of the date of the filing hereof.

7.      Additionally, all defendants have failed or refused to comply with the provisions of Sections 32-5B-8(d), 32-5-222(i) and 32-6-7.3, Code of Alabama, 1975,

as amended and have willfully and deliberately disregarded the reporting requirements contained therein. These statutory reporting requirements are calculated to identify racial profiling by law enforcement and mandate the submission of data to the Alabama Department of Public Safety and the Office of the Attorney General of Alabama, the highest law enforcement officials in the State.

8.      In the cases of the cities of Alabaster and Pelham, the defendants have willfully and deliberately failed or refused to tender public records requested on behalf of the Plaintiffs pursuant to Sections 36-12-40 and 41, Code of Alabama, 1975, as amended. The City of Hoover has arguably made many such records available as required by applicable law and as requested by the Plaintiffs, through their attorney, the undersigned for himself and the Plaintiffs in such capacity as such attorney.

9.      The above-described actions of the defendants have been intentional, deliberate and illegal. They are designed to rid the defendant municipalities of Hispanic immigrants because of race, nationality, skin color, language and economic circumstance, and to conceal from public view the evidentiary proof of their intentional and willful discrimination.

10.     Furthermore, the defendants have promulgated ordinances and administrative rules and regulations regarding public facilities, residential rental properties, business licensing and regulation that have as their purpose the intimidation of the Plaintiffs and the class they represent from seeking or obtaining housing or operating a business within the corporate limits of such municipalities.

11.    The actions of the defendants, taken in concert, violated the 14th Amendment to the Constitution of the United States,  the provisions of the Civil Rights Act, 42 U.S.C. §§1981, 1982, 1983 and 1985, the Alabama Constitution of 1901, and the common law of the State of Alabama.

12.    The defendant municipalities have promulgated ordinances and administrative rules and regulations having as their purpose the intrusion into the purely private affairs of the Plaintiffs and the class(es) that provide for unreasonable searches and seizures, couched as "inspections" by all types of municipal officials, require illicit supervision and recordkeeping by owners of rental property, and coopt the same into enforcing, or attempting to enforce, federal immigration law, in violation of the 4th Amendment to the United States Constitution, and divers federal authority.

13.    As a result, Plaintiffs seek declaratory and injunctive relief, compensatory and exemplary damages and an award of costs and counsel fees.

## II.

## THE PARTIES

### The Plaintiffs

14.    Plaintiff, John Doe I, is a citizen of the Republic of Mexico who resides in the City of Pelham, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Pelham for driving without first obtaining a driver's license. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely

because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

15.     Plaintiff, John Doe II, is a citizen of the Republic of Mexico who resides in the State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Hoover for driving without first obtaining a driver's license and failure to obtain insurance. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of one thousand dollars ($1000.00).

16.     Plaintiff, John Doe III, is a citizen of the Republic of Mexico who resides in the City of Alabaster, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Pelham for driving without first obtaining a driver's license. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

17.     Plaintiff, John Doe IV, is a citizen of the Republic of Mexico who resides in the City of Alabaster, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Alabaster for driving without first obtaining a driver's license and failure to obtain insurance. He received no other citation. The stop of the Plaintiff was without reasonable cause and

was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of one thousand dollars ($1000.00).

18.     Plaintiff, John Doe V, is a citizen of the Republic of Mexico who resides in the City of Alabaster, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Alabaster for driving without first obtaining a driver's license and failure to obtain insurance. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of one thousand dollars ($1000.00).

19.     Plaintiff, Jane Doe I, is a citizen of the Republic of Mexico who resides in the City of Calera, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Pelham for driving without first obtaining a driver's license. She received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because she is Hispanic. She was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

20.     Plaintiff, John Doe VI, is a citizen of the Republic of Mexico who resides in the City of Pelham, State of Alabama and is undocumented.  The Plaintiff is the owner and proprietor of a business located in Jefferson County, Alabama. He has entered into contracts with various persons, firms and corporations within the State of Alabama and has business interests in all of the defendant municipalities.

21.     Plaintiff, Jane Doe II, is a citizen of the Republic of Mexico who resides in the City of Moody, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Alabaster for driving without first obtaining a driver's license. She received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because she is Hispanic. She was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

22.     Plaintiff, John Doe VII, is a citizen of the Republic of Mexico who resides in the City of Hoover, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Hoover for driving without first obtaining a driver's license. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

23.     Plaintiff, John Doe VIII, is a citizen of the Republic of Mexico who resides in the City of Leeds, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Leeds for driving without first obtaining a driver's license. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

24.     Plaintiff, John Doe IX, is a citizen of the Republic of Mexico who resides in the City of Pelham, State of Alabama and is undocumented.  Within six months of the filing hereof this Plaintiff was stopped, detained and ticketed by the City of Irondale for driving without first obtaining a driver's license. He received no other citation. The stop of the Plaintiff was without reasonable cause and was effectuated solely because he is Hispanic. He was fined and required to pay the costs of court totaling in excess of five hundred dollars ($500.00).

25.     The class or classes the Plaintiffs represent is comprised of Hispanic immigrants to the United States and the State of Alabama who have been and may be motorists, pedestrians, residential tenants or business owners within the defendant municipalities.

## The Defendants

26.     The City of Alabaster, Alabama (hereinafter, "Alabaster"), is a duly incorporated municipal corporation organized and existing under the laws of the State of Alabama and within the jurisdiction of this Honorable Court.

27.     The City of Pelham, Alabama (hereinafter, "Pelham"), is a duly incorporated municipal corporation organized and existing under the laws of the State of Alabama and within the jurisdiction of this Honorable Court.

28.     The City of Hoover, Alabama (hereinafter, "Hoover"), is a duly incorporated municipal corporation organized and existing under the laws of the State of Alabama and within the jurisdiction of this Honorable Court.

29.     The City of Leeds, Alabama (hereinafter, "Leeds"), is a duly incorporated municipal corporation organized and existing under the laws of the State of Alabama and within the jurisdiction of this Honorable Court.

30.     The City of Irondale, Alabama (hereinafter, "Irondale"), is a duly incorporated municipal corporation organized and existing under the laws of the State of Alabama and within the jurisdiction of this Honorable Court.

## III.

## JURISDICTION and VENUE

31.     This Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 1981, 1983 and 1985,  28 U.S.C §1331, 1332, 1343(a)(3) and 28 U.S.C. §2201, because this is a civil rights action that presents a federal question and because there is diversity of citizenship between the parties and the amount at issue exceeds $75,0000. This Court has supplemental jurisdiction of the state claims pursuant to 28 U.S.C §1367(a).

32.     Venue is appropriate in this Court because the defendants exist and the underlying actions took place within the jurisdictional confines of the Southern Division of the Northern District of Alabama.

33.     Plaintiffs, and the members of the class or classes they represent, are or were Hispanic immigrants to the United States who have had the misfortune of walking or driving a motor vehicle through the police jurisdiction of the defendant municipalities at some point within six months of the date of the filing hereof, or who have sought

to rent residential property or who entered into contractual agreements within such municipalities.

34.     Plaintiff and the class or classes they represent were all stopped and detained by officers of the police departments of the defendant municipalities on either legitimate or pretextual grounds, illegally detained by such officers, subsequently charged with one or more violations of the municipal ordinances of the defendant municipalities, and otherwise deprived of rights, privileges and immunities secured by the laws of the United States, the State of Alabama, the Alabama Constitution of 1901 and the Constitution of the United States.

35.     The Plaintiffs and the class or classes they represent have all been subjected to discrimination predicated upon their race and status, Hispanic immigrant, in furtherance of a pattern, practice, policy or procedure pursuant to which the municipalities and their public officials, illegally, wrongfully and purposefully invoked the criminal sanction to mature a stated purpose of forced relocation of the Plaintiff and the class herein to environs lying outside the municipalities, violating their rights, privileges and immunities accorded by the Constitutions of the United States and the State of Alabama.

36.     Illegal stops, citations resulting therefrom, and municipal court convictions have generated well in excess of six million dollars in fines and court costs to the defendant municipalities within the past three years, a sum which Plaintiffs seek to recoup for themselves and the class or classes they represent, at times when municipal

officials claimed that illegal immigration constituted an undue and unnecessary burden upon municipal coffers.

## IV.

## STATEMENT OF FACTS

37.   Plaintiffs aver that the defendants, through their police departments and administrative personnel, have targeted them and other Hispanic individuals for special treatment under their administrative promulgations and ordinances, have engaged in illegal and unconscionable racial or ethnic profiling, have enacted ordinances having as their purpose intentional and deliberate discrimination against the Plaintiffs and other members of the Hispanic communities of such municipalities, and have otherwise acted in derogation of rights, privileges and immunities protected by the 14th Amendment to the United States Constitution, sections 30 and 34 of the Constitution of Alabama of 1901, and 42 U.S.C. §1981, 1983 and 1985.

38.   Specifically, the defendants' police departments have stopped the Plaintiffs and members of the class or classes they represent routinely and habitually without legal justification therefor or on pretextual bases and have demanded drivers' licenses and proof of insurance from them during such traffic stops.

39.   In most instances, and in every instance involving the named Plaintiffs, no citation other than "driving without first obtaining a drivers' license" or "failure to display insurance" or similar alleged violations of Alabama law was issued by law enforcement officials.

40.     These municipalities have promulgated ordinances that permit unreasonable searches and seizures of the Plaintiffs and the members of the class or classes they represent by authorizing the entry and search of the Plaintiffs' residences at unreasonable times, without probable cause or legal justification. Any municipal official is putatively granted authority to conduct these illegal searches.

41.     The municipal ordinances in question also contain reporting requirements that afford the defendant municipalities the ability to gather data and location information regarding all Hispanic individuals residing within the police jurisdiction of such municipalities and illegally press the owners of rental property within the municipalities into the service of this illegal and unconscionable effort.

42.     The above-stated activities of the several municipal police departments have been occurring for a number of years with increasing intensity, and the enactment of HB-56 has created additional fear and panic in the Plaintiffs and in the Hispanic communities of the several municipalities generally.

43.     The fear and panic aforesaid has been exacerbated by the historical proclivities of the several police departments in the subject municipalities to stop the Plaintiffs and other members of the Hispanic community without "reasonable cause", as that term may be understood from the enactment or the statutory and common law of the State of Alabama, and is further evidenced by the flight from these municipalities of such persons in anticipation of HB-56 going into effect.

44.     The past discrimination and profiling activities of the defendant municipalities, coupled with the enactment of HB-56, has created in the Plaintiffs and the members of the class or classes they represent a clear perception that police departments and other regulatory and administrative personnel of the defendant municipalities have been given "carte blanche" to continue to engage in the illegal activities aforementioned and in fact to step up their unlawful usurping of the authority of the federal government to enforce federal immigration law.

45.     In fact, none of the police, regulatory or administrative officials employed by the defendant municipalities in this action have received adequate training in document identification or other training necessary to make the very determinations the State of Alabama now seeks to grant them authority to enforce.

46.     The aforementioned officials do not have adequate access to federal immigration records and proceedings sufficient to enable them to perform such functions.

47.     The past discrimination and profiling by the defendants against the Plaintiffs and the members of the class or classes of individual they represent demands redress, not an apparent blanket delegation of authority to continue in these deplorable policies, practices and procedures.

48.     The defendant municipalities have arguably been granted plenary discretion and authority to usurp the federal prerogative, to conduct themselves as de facto federal

immigration officials, and to do so clothed with a legally unsupportable apparent legitimacy.

## CLASS ACTION ALLEGATIONS

49.    The named Plaintiffs bring this action on their own behalf, and on behalf of a class of persons under Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

50.    The named Plaintiffs seek to represent a class of legal and undocumented or illegal Hispanic immigrants/aliens who have been or may be  (a) illegally and discriminatorily stopped, searched, arrested, charged, convicted and sentenced by the defendants' municipal courts; (b) required to pay exorbitant sums to the municipal courts in fines and costs of court; (d) subjected to racial profiling at the hands of the defendants police, administrative, licensing and inspection departments and others acting in concert with them, and (e) otherwise deprived of rights, privileges and immunities secured by the Constitution of the United States.

51.     The individuals in the class are so numerous that joinder of all members is impracticable. Plaintiffs estimate that there are at least 8000 members of the class.

52.    There are questions of law and fact common to the class or classes that predominate over any questions affecting only the individual Plaintiffs. Among these common questions are:

a.        Whether the municipalities have established a pattern, practice, policy, procedure, custom or usage pursuant to which members of the Hispanic race are subjected to discriminatory enforcement of the laws and ordinances of the defendant municipalities;

b.        Whether the municipalities have acted with respect to the Plaintiffs and members of the class or classes sought to be represented by them in such a fashion as to deprive them of enumerated rights guaranteed by the Constitution of the United States and are entitled to relief pursuant to 42 U.S.C. §1981, 1983 and 1985;

c.        Whether the municipalities, in furtherance of the policies aforementioned, have wrongfully, illegally and discriminatorily selected members of the Hispanic race or whose national origin lies within Mexico or Latin America or South America for treatment different than the treatment accorded members of the black, white, oriental or other races or nationalities;

d.        Whether the municipalities conspired to injure, oppress, threaten, or intimidate the Plaintiff and the class or classes they represent within the State of Alabama in the free exercise or enjoyment of any right or privilege secured to them and the class(es) by the Constitution or laws of the United States and prohibited by 18 U.S.C. §242;

e.        Whether the municipalities willfully subjected the Plaintiffs and the class(es) they represent within the State of Alabama to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States,

or to different punishments, pains, or penalties, on account of such person(s) being an alien(s) or by reason of their color, or race, than are prescribed for the punishment of citizens and prohibited by 18 U.S.C. §241;

f.      Whether the police officials of the municipalities have engaged in the discredited and illegal practice of racial profiling in connection with the performance of their official duties or, in the alternative, have criminalized the status of being Hispanic;

g.      Whether the officials of the municipalities have routinely conducted warrantless, invasive searches of Hispanic individuals unrelated to their legitimate law enforcement functions in violation of the 4th Amendment to the United States Constitution so as to entitle the Plaintiff and the class to relief pursuant to 42 U.S.C. § 1983 and 1985;

h.      Whether the defendant municipalities have promulgated ordinances regarding rental properties and leasing that discriminate against the Plaintiffs and the class on account of race or ethnicity;

i.      Whether the defendant municipalities' past discrimination against the Plaintiffs and the class or classes they represent entitles the Plaintiffs to declaratory and injunctive relief prohibiting the defendants from availing themselves of the authority putatively granted them under HB-56.

j.      Whether the actions of the defendants intentionally and deliberately impaired the rights of the Plaintiff John Doe VI and the members of the class he

represents to make and enforce contracts so as to afford him the remedies sought herein pursuant to 42 U.S.C. §1981.

k.      Whether the defendants, by and through their police departments, rental housing departments, building inspection officials, and business licensing departments have conspired to deprive the Plaintiffs and the class(es) they represent of rights, privileges and immunities secured to them by the 14th Amendment to the United States Constitution so as to afford them the relief they seek pursuant to 42 U.S.C. §§1983 and 1985.

l.      Whether the City of Hoover, Alabama violated the terms and condition of the agreement reached in connection with prior litigation maintained against it in the civil action styled *Anel Mancera-Ramirez v. City of Hoover, Alabama* and bearing case number CV-05-BE-2618-S in which the City of Hoover covenanted to treat the Plaintiffs and all members of the Hispanic community fairly under the law.

53.     The claims of the representative parties are typical of the claims of the class.

54.     The named Plaintiffs will fairly and adequately represent the interests of the class. The named Plaintiffs have retained skilled and experienced counsel to represent them in class litigation.

55.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous

individual actions would entail.  No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

56.      Issues common to the class, as noted in paragraph 48, above, predominate over individual issues. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the defendants.

<u>COUNT I</u>

<u>Declaratory and Injunctive Relief</u>

57.     Plaintiffs aver for themselves and the class or classes they represent that the defendant municipalities, acting through their public officials, have established a pattern, practice, policy, procedure, custom or usage pursuant to which members of the Hispanic race are subjected to discriminatory enforcement of the laws and ordinances of the defendant municipalities.

58.     Plaintiffs aver that in so doing the defendants have established a racially and ethnically hostile environment in which the Plaintiffs work and live in constant fear of arrest and deportation at the hands of public officials who have demonstrated a flagrant, shameful and willful disregard for constitutional principles and the rights, privileges and immunities of the Plaintiffs and the class(es) they represent.

59.     Specifically, Plaintiffs aver that the police departments of the defendant municipalities have conspired with agents of the United States Department of

Immigration and Customs Enforcement to stop, detain and demand documentation from the Plaintiffs and the members of the class(es) they represent with a view to facilitating their arrests and deportations.

60.     Typically, municipal police officers stop an Hispanic on the basis of his or her appearance only, demand a driver's license and proof of insurance as authorized by Alabama law, and when the same cannot be produced, non-consensual searches of the vehicle or the individual are conducted, during which putatively forged documentation or other alleged contraband is sometimes found, following which the police arrest the individual based upon the illegal search and I.C.E. agents are contacted, a detainer placed upon the individual so that he or she cannot be released on bail, and the individual is deported, all without the assistance of counsel or any understanding of his or her legal rights to contest these actions.

61.     None of the named Plaintiffs was charged with any offense other than "driving without first obtaining a driver's license" or "failure to display insurance", as is frequently the case with Hispanic motorists, in that these individuals were stopped solely because of their Hispanic appearance or other indicia of foreign nationality or citizenship.

62.     The statistical anomalies present in data maintained by the defendants demonstrate conclusively the pattern and practice of the defendants in their treatment of the members of the Hispanic Community, and militate in favor of the relief requested herein.

WHEREFORE, Plaintiffs, individually and as representatives of the class or classes herein identified demand the following relief:

a.  That this Honorable Court issue a declaratory judgment that the defendants, and each of them, have acted, and are likely to continue to act in the future absent the timely intervention of this Court, in such a fashion so as to deprive the Plaintiffs of rights, privileges and immunities guaranteed them by the Constitution of the United States as alleged herein;

b.  That this Honorable Court will declare that the conduct of the defendant municipalities in all of their guises and pursuant to all their putative authority has been so egregious historically that to permit them to avail themselves of the authority arguably granted them by HB-56 would necessarily create a wholesale delegation to the municipal governments and their elected and appointed officials of purely federal prerogatives and would almost certainly result in the further abuse and deprivation of rights guaranteed the Plaintiffs by the 14th Amendment to the United States Constitution and by Section 30 of the Alabama Constitution of 1901.

c.  That this Honorable Court will enter a preliminary and permanent injunction against the defendants prohibiting them from exercising the authority putatively granted them by HB-56 by racially profiling and otherwise discriminating against members of the Hispanic race or ethnicity during the enforcement of their ordinances or administrative promulgations;

21

## COUNT II

### Monetary Damages and Restitution

63.     Plaintiffs aver that the defendants have reaped massive sums of money from the Plaintiffs and other members of the Hispanic community deriving from fines, court costs imposed in connection with traffic citations issued them by the defendants' police departments.

64.     Fearful of the intertwined relationship between the municipal police departments and I.C.E., the Plaintiffs and other members of the Hispanic community pleaded guilty to the license and insurance complaints and paid the assessed fines and costs of court as aforesaid, and without benefit of counsel.

65.     These sums total in excess of six million dollars ($6,000,000.00) over the course of the past three (3) years and are related only to traffic stops made by the defendants' law enforcement officials which resulted in convictions for driver's license and automobile insurance related charges for which no offense demonstrating "reasonable suspicion" was charged. In other words, there was no reasonable cause to stop the Plaintiffs or members of the class(es) so as to afford the police officials an opportunity to request a driver's license of proof of insurance.

66.     Plaintiffs aver that the fines and costs of court were illegally obtained by the defendants and that the Plaintiffs and the members of the class(es) they represent are entitled to restitution of these unconstitutionally imposed fines and costs.

WHEREFORE, Plaintiffs, for themselves and the class or classes they represent, demand judgment against the defendants in an amount to be determined by the court and jury in restitution of fines and costs illegitimately and unconstitutionally imposed.

COUNT III

Constitutional Violations

67.    Plaintiffs incorporate the allegations contained in the preceding paragraphs 1 through 66 *in haec verba*.

68.    Plaintiffs aver that the defendants have established an intentional and deliberate pattern, practice, policy, procedure, custom or usage pursuant to which they, and the members of the class(es) they represent, have been targeted for treatment by the defendants' public officials in a fashion different and more harsh and scrutinizing than similarly situated Caucasian individuals.

69.    This pattern and practice violates the 14th Amendment to the United States Constitution, Section 30 of the Alabama Constitution of 1901 and 42 U.S.C. §241 so as to entitle the Plaintiffs to redress pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiffs, for themselves and the class or classes they represent, demand judgment against the defendants in an amount to be determined by the court and jury upon a trial hereof, attorney's fees and the costs and disbursements of this action.

<u>COUNT IV</u>

<u>Conspiracy to Deny Constitutional Rights</u>

70.    Plaintiffs incorporate the allegations contained in the preceding paragraphs 1 through 66 and 68-69 *in haec verba*.

71.    Plaintiffs aver that the defendants, through the members of their police departments and other officials, have conspired to deny them and the members of the class(es) they represent the rights, privileges and immunities guaranteed them by the 14th Amendment to the Constitution of the United States, Section 30 of the Alabama Constitution of 1901 and subsumed by 18 U.S.C. §242.

72.    The actions of the defendants and their public officials are actionable pursuant to 42 U.S.C. §1985.

WHEREFORE, Plaintiffs, for themselves and the class or classes they represent, demand judgment against the defendants in an amount to be determined by the court and jury upon a trial hereof, attorney's fees and the costs and disbursements of this action.

<u>COUNT V</u>

<u>Constitutional Claims Involving Defendants' Public Officials</u>

73.    Plaintiffs incorporate the allegations contained in the preceding paragraphs 1 through 66, 68-69  and 71-72 *in haec verba*.

74.    Plaintiff and the class aver that the elected and appointed officials established a public policy of discrimination against Plaintiff and other members of the Hispanic

community, and planned, orchestrated, devised and designed a plan pursuant to which such persons have been and continue to be discriminated against solely on the basis of their race.

75.     Plaintiff and the class aver that the defendants' officials were under an affirmative duty to prevent the police department from harassing, intimidating, wrongfully stopping, searching, arresting, prosecuting and convicting them; yet despite actual knowledge of the practices of the police department, the elected and appointed officials nurtured and promoted such practices in order to further the official municipal policy of forcing the Hispanic population from their midst.

76.     The elected and appointed officials have an affirmative duty and responsibility to supervise, train and discipline the members of the municipal police department of and to provide them with guidance, rules and regulations regarding the manner of their performance of their official duties as such. The elected and appointed officials have an affirmative duty and responsibility to see to it that laws are enforced in a manner in conformity with the laws and Constitution of the State of Alabama and the Constitution of the United States.

77.     The elected and appointed officials willfully, wantonly and intentionally failed or refused to fulfill the obligations aforementioned, with the direct and proximate consequence that Plaintiff and the members of the class have been deprived of rights, privileges and immunities guaranteed them under the United States Constitution.

78.     The elected and appointed officials improperly delegated to the officers of their respective police departments plenary and absolute discretion and authority to undertake the action referred to above so that the actions of the police department may fairly be stated to constitute the actions of the elected and appointed officials.

79.     The elected and appointed officials have intentionally and willfully permitted the members of their respective police departments to conduct themselves in an arbitrary and capricious manner with respect to their duties as regards the Plaintiff and the class.

80.     The conduct of the elected and appointed officials, by nurturing, promoting or cultivating a discriminatory policy implemented by their police departments and by failing to provide for adequate training, supervision or discipline of such police officials, deprived the Plaintiffs of rights, privileges and immunities secured to them by Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiff and the class they represent pray that this Honorable Court will declare the foregoing policy, procedure or official action of the municipalities and others acting in concert with them including, but not limited to, the police officials, and the Department of Immigration and Customs Enforcement to be violative of the constitutional provisions aforementioned and that this Court will enjoin these parties and those acting in concert with them from engaging in the discriminatory actions of which Plaintiff complains.

26

Plaintiffs and the class further pray that this Honorable Court will issue such declaratory judgment and such injunctive relief as they be entitled to receive pursuant to 42 U.S.C. §§1983 and 1985, and for such other, different and further relief as they may be entitled to receive, the premises considered.

COUNT VI

Hoover's Breach of Contract

81.     In connection with the disposition of the civil action styled *Anel Mancera-Ramirez v. City of Hoover, Alabama* and bearing case number CV-05-BE-2618-S maintained in the Northern District of Alabama, the City of Hoover, Alabama, it Mayor, Tony Petelos and Police Chief Chief Nick Derzis covenanted with the Plaintiffs to treat all Hispanics fairly in its dealings with them.

82.     Plaintiff, John Doe II and John Doe VIIs aver that, although the action was not certified a class action, it was maintained as such, and that the Plaintiffs and the members of the class they represent were third party, if not direct, beneficiaries of the agreement reached in that litigation.

83.     Contrary to the provisions of the agreement reached in the above-referenced litigation, the City of Hoover has engaged in manifestly unfair and discriminatory practices, policies and procedures which violate the spirit and intent of the agreement.

84.     Specifically, the City has continued to engage in racial profiling of Hispanics in most of its official activities, has nurtured, promoted or condoned the effectuation of traffic stops based solely upon the race of the Hispanic motorist, has promulgated and

enforced ordinances having as their purpose the intimidation of Hispanics in Hoover's rental housing market, has imposed unreasonable and discriminatory conditions upon Hispanics seeking to do business within the police jurisdiction of the municipality, has allocated law enforcement and regulatory resources so as unfairly to target members of the Hispanic community, and has otherwise engaged in conduct violative of the aforementioned agreement ratified by this Honorable Court.

85.     The activities and conduct in breach of the stated agreement have brought into the city's coffers in excess of three million dollars in civil and criminal penalties, fines and costs unfairly imposed and discriminatorily assessed against the Plaintiffs and the members of the Hispanic community of the City of Hoover and elsewhere.

        WHEREFORE, Plaintiffs demand judgment against the defendants in an amount in excess of three million dollars or such other sum as this Honorable Court upon trial by jury may determine just and reasonable in compensatory damages for breach of the agreement aforementioned, attorney's fees, and the costs and disbursements of this action.

<u>COUNT VIII</u>

<u>Violations of Alabama Statutory Law</u>

86.     As a condition of its continued receipt of federal highway and other funds the State of Alabama enacted statutes calculated to notify the highest public officials in Alabama law enforcement, the Attorney General of Alabama and the Alabama

28

Department of Public Safety, of potential problems involving racial profiling of the kind alleged herein.

87.     These statutes have been codified at Sections 32-5B-8(d), 32-5-222(i) and 32-6-7.3, Code of Alabama, 1975, as amended and require state, county and municipal law enforcement agencies to make monthly reports to the Attorney General of Alabama and the Alabama Department of Public Safety of the ticketing and detention of minorities.

88.     Each defendant has failed or refused to make timely, if any, reports to the state officials aforementioned.

89.     The Attorney General of Alabama has largely ignored the strictures of the statute, stating upon diligent inquiry on behalf of the Plaintiffs, that it is hoped that the requirements of the statute will obviated by amendment to the Alabama Code.

90.     The Alabama Department of Public Safety has established a mechanism for reporting but, as established, ignores the ethnicity of the Plaintiffs and the members of the class they represent, in that it provides a reporting mechanism only for "White, Black, Native American and Other" races and ethnicities in its system, ignoring wholesale the Hispanic ethnicity, and thus defeating the purpose of the reporting statute. In any event, the defendants have failed or refused to make the required reports even to the system as defective as that of the Alabama Department of Public Safety.

91.    The defendants have habitually failed or refused to maintain accurate records of the races and ethnicities of motorists stopped and ticketed, ignoring almost 80% of the Hispanics stopped detained and ticketed in their record-keeping (identified them only as "white"), and identifying, in an incredible example of deficient training and supervision, members of the ethnic minorities originating in India and Pakistan, as "Native American", presumably because the motorists identified themselves as "Indian" when initially subjected to the traffic stop.

92.    With the exception of the City of Hoover, the defendants have failed or refused to comply with the provisions of Sections 36-12-40 and 41, Code of Alabama, 1975, as amended, Alabama's public records disclosure statute.

93.    The cities of Alabaster and Pelham have concealed and obfuscated their flagrant habituations to racial profiling and discrimination against Plaintiffs John Does I, III, IV, V and VI and Jane Does I and II and the class(es) by failing or refusing to make available the database records of their municipal courts and police departments, maintained by the defendant municipalities in the ordinary course of business, available for inspection and copying as required by law, and eminently subject to disclosure under the law. *See Scott v. Culpepper*, 220 Ala. 393, 393-94, 125 So. 643, 644 (1930) (The law "gives every citizen a right to inspect and take a copy" of public records.); *State v. Martin*, 4 So.3d 1196, 1201 (Ala.Crim.App. 2008); *Ex parte Perch*, 17 So.3d 649 (Ala. 2009); *Chambers v. Birmingham News Co.,* 552 So.2d 854 (Ala.1989); *Stone v. Consolidated Publishing Co.,* 404 So.2d 678 (Ala.1981); *Mobile Press Register v.*

*Lackey*, No. 1041260; *Thompson v. U.S. Dept.of Housing and Urban Development*, 219

F.R.D. 93, 96 (D. Maryland 2003) and cases cited therein; *Zubulake v. UBS Warburg*

*LLC*, 217 F.R.D. 309, 315-16 (S.D.N.Y. 2003)("*Zubulake I*"); *McPeek v. Ashcroft*, 202

F.R.D. 31 (D.D.C. 2001); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645

(D.Minn. 2002); *Wiginton v. CB Richard ELLIS*, 2003 WL 22439865 (N.D.Ill. Oct. 27,

2003).

94.    These two municipalities responded to the Plaintiffs' attorney's request for

access to and copying of these public records by offering copies of the paper citations

upon payment of a deposit in excess of $40,000.00, effectively denying the Plaintiffs'

attorney, who is a citizen of the United States and of the State of Alabama copies of

the requested records.

95.     Not only is their failure and refusal to comply with clearly applicable law

revelatory of the fact of their illegal racial profiling, it is evidence of their

consciousness of their culpability in this regard.

96.    The Plaintiffs aver that the intentional concealment of the records

aforementioned in violation of Alabama law and the flagrant violation of Alabama's

minority reporting statutes constitute a collateral deprivation of rights guaranteed

under the 14th Amendment to the United States Constitution in that the substantive

violations cannot come into the light of day absent compliance with these statutes

imbued with this fundamental public disclosure policy.

97.     If the government is permitted to operate in the shadows, no protected person, citizen or not, is safe from such a fundamental deprivation of constitutional liberties.

WHEREFORE, Plaintiffs and the class(es) demand judgment against the defendants as follows:

a.  That the defendants be required to submit detailed information regarding the implication of minority individuals as required by Sections 32-5B-8(d), 32-5-222(i) and 32-6-7.3, Code of Alabama, 1975, as amended.

b.  That this Honorable Court issue a declaratory judgment that the defendants have violated the requirements of Sections 36-12-40 and 41, Code of Alabama, 1975, as amended and that hereafter the defendants be required to tender to any citizen, whether individually or on behalf of non-citizen minority individuals access to and copies of any and all public documents, including recorded data, upon demand as required by Sections 36-12-40 and 41, Code of Alabama, 1975, as amended.

c.  That this Honorable Court enter an order directing that the official actions or omissions to act of the defendant municipalities see the light of day.

d.  That the defendants be required to pay attorney's fees and the costs and disbursements of this action.

e.  That the Plaintiffs and the class or classes they represent be accorded such other, further and different relief as they may be entitled to receive, the premises considered.

COUNT IX

Discrimination by Ordinance

98.     Plaintiffs incorporate the allegations contained in the preceding paragraphs 1

through 66, 68-69, 71-72 and 86-97 *in haec verba.*

99.     Plaintiffs aver that the defendant municipalities, in an effort to legitimize the

pattern and practice of racial and ethnic discrimination which their official policies

sought to mature, promulgated ordinances and enacted rules and regulations

calculated to create an official social environment in which members of the Hispanic

community felt unwelcome and would remove themselves from the hostility and

personal degradation which the defendant municipalities sought to engender.

100.    The ordinances, rules and regulations were illegal and were calculated to mature

the illicit purpose of discriminating against members of the Hispanic community .

101.    By way of example, the Mayor of the City of Leeds, Alabama rewrote the

municipal code so as to preclude the Plaintiffs, their citizen children, and the

members of the class(es) from utilizing public facilities, such as libraries, athletic

fields, parks and recreational facilities, among other intentions.

102.    In an extreme demonstration of its racial and ethnic animus, the City Council

or the City of Irondale, Alabama in 2009 promulgated a draconian ordinance far more

extreme than the obviously unconstitutional Arizona, Georgia and Alabama's own

HB-56, and other patently discriminatory legislative pronouncements, which

ordinance by its very promulgation constituted a violation of the 14th Amendment.

WHEREFORE, Plaintiffs, for themselves and the class or classes they represent request that this Honorable Court declare the aforementioned ordinances, rules and regulations promulgated and enacted by the defendant municipalities to be patently discriminatory and violative of the 14th Amendment to the United States Constitution, and, therefore, invalid;

That this Honorable Court enjoin enforcement by such municipalities of ordinances, rules and regulations found to be in violation of the 14th Amendment to the United States Constitution;

That this Honorable Court grant the Plaintiffs and the members of the class or classes they represent such other, further and different relief as they may be entitled to receive, the premises considered.

Respectfully submitted this 23rd day of September, 2011.

PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE THEREBY

George Huddleston III(asb3863h71g)
Attorney for Plaintiffs and the class
2629 Dolly Ridge Road
Birmingham, Alabama 35243
(205)563-2900
hooaah@bellsouth.net