# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **CECILIA CANO-DIAZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:11-CV-3448-VEH** |
| | ) |
| **CITY OF LEEDS, ALABAMA,** | ) |
| | ) |
| **Defendant.** | ) |

---

## <u>MEMORANDUM OPINION</u>

Before the court is the Defendants' Motion To Dismiss Plaintiffs' First Amended Complaint (the "Motion") (doc. 33), filed on May 29, 2012, by Defendants City of Alabaster, Alabama, City of Irondale, Alabama, and City of Leeds, Alabama.[1] The Motion has been fully briefed by the parties (see docs. 38, 42). Additionally, the court heard oral argument on the Motion on July 10, 2012. Therefore, the Motion is under submission and ripe for the court's decision.

---

[1] This putative class action lawsuit was initially filed by multiple plaintiffs against multiple municipal defendants. However, on July 17, 2012, the court ordered that this case be severed into individual lawsuits, and directed that the claims of the first-named plaintiff, Cecilia Cano-Diaz, would proceed individually in this action, Case No. 2:11-CV-3448-VEH, against the City of Leeds, Alabama. (Doc. 45). Consistent with the court's order, the City of Alabaster, City of Pelham, and City of Irondale have been terminated as defendants. Accordingly, the court considers the Motion To Dismiss (doc. 33) only insofar as it pertains to the City of Leeds. To the extent the Motion To Dismiss pertains to the City of Alabaster and City of Irondale, it is hereby **TERMED** as moot.

## I.   BACKGROUND

### A.   Procedural History

Originally, there were eleven (11) individual plaintiffs who jointly filed a Complaint (doc. 1) in the United States District Court for the Northern District of Alabama on September 23, 2011, along with a Motion for Leave to Proceed Anonymously (doc. 3), which the court ultimately denied. (*See* Order dated April 26, 2012, Doc. 28).   The court required repleader, ordering the previously unnamed plaintiffs to file an Amended Complaint that "must set out each Plaintiff's name and provide the necessary facts to meet notice pleading standards as to each claim against each Defendant," no later than May 14, 2012.  (*Id.* at 16).   More specifically, this court stated the following with respect to the Amended Complaint:

> As the Plaintiffs will be required to replead to provide their names, the court finds that judicial efficiency dictates that they will also be required, under Rule 12(e) of the Federal Rules of Civil Procedure, to re-plead each claim as to each Plaintiff separately against each Defendant, setting out as to each claim with the requisite specificity the allegations upon which it is based.  At a minimum as to each Plaintiff's traffic stop claim, in addition to the name of the plaintiff, this means the approximate date on which and place where the traffic stop occurred.

(*Id.*).

The First Amended Complaint was filed on May 14, 2012.  (Doc. 29).  Several motions to dismiss followed.  Defendant City of Pelham, Alabama, filed its Motion

To Dismiss First Amended Complaint on May 29, 2012.  (Doc. 30).[2]   Defendants City of Alabaster, Alabama, City of Irondale, Alabama, and City of Leeds, Alabama, filed their Motion To Dismiss First Amended Complaint—the Motion presently pending before the court—on May 29, 2012.  (Doc. 33).  At the request of the parties (doc. 34), the court heard oral argument on the pending Motions To Dismiss. Counsel for the City of Pelham argued on behalf of all municipal defendants in light of the overlapping issues raised and arguments made in the defendants' briefing.

After hearing oral argument and putting the parties on notice of the court's views on the proper party-alignment of this case, the court entered an order *sua sponte* severing the claims of the individually named plaintiffs against the various municipal defendants.  (Doc. 45).  In its opinion and order, the court directed that "[t]he claim(s) of Plaintiff Cecilia Cano-Diaz will proceed in this action, numbered 2:11-cv-03448-VEH, against the City of Leeds, Alabama."  (*Id.* at 8).  Therefore, the court's analysis in this opinion concerns only the claims of Plaintiff Cano-Diaz against the City of Leeds, and the court will evaluate the pending Motion from that perspective.

---

[2]  By separate order, the court has termed the City of Pelham's Motion To Dismiss in this case as moot because that defendant is no longer a party to this case.

**B.    Facts[3]**

In light of the foregoing procedural history, the court focuses its statement of the facts solely on the claims of Plaintiff Cano-Diaz against the City of Leeds.

In the First Amended Complaint, Cano-Diaz is described as "a 22-year-old Hispanic woman who resides in Moody, Alabama in Jefferson County." (Doc. 29 ¶ 13).  She "frequently visits or travels through municipalities where officers of the Defendant's police departments have been deployed and conduct traffic stops, frisks and make arrests."  (*Id.*).  Defendant City of Leeds is described as  a "municipal corporation[] organized and existing under the laws of the State of Alabama" that is "authorized under the State of Alabama to maintain a police department, which act[s] as [its] agent[] in the area of law enforcement and for which [the City of Leeds] is ultimately responsible."  (*Id.* ¶ 20).

Generally speaking,

> [Cano-Diaz] aver[s] that the Defendant [City of Leeds] ha[s] implemented, enforced, encouraged and sanctioned a policy, practice and/or custom of suspicionless traffic stops and/or frisks in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  This unconstitutional conduct is a direct and

---

[3]  The court accepts the allegations of the complaint as true, and presents the facts in the light most favorable to Cano-Diaz, for the purposes of its motion to dismiss analysis.  *See Fassina v. CitiMortgage, Inc.*, 2:11-CV-2901-RDP, 2012 WL 2577608, at *5 (N.D. Ala. July 2, 2012) ("In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007).").

proximate result of policies, practices and/or customs of supervisory personnel within the Defendant['s] respective police department[] as well as the elected Mayor[] and City Council[] of the [City of Leeds]. These individuals have acted with deliberate indifference to the constitutional rights of those who would come into contact with police officers by: (a) failing to properly screen, train, and supervise police officers, (b) inadequately monitoring such officers and their stop and frisk practices, (c) failing to sufficiently discipline officers who engage in constitutional abuses, and (d) encouraging, sanctioning and failing to rectify the unconstitutional practices, (e) the explicit and tacit encouragement, sanctioning and ratification of and failure to rectify their respective police department['s] rampant unconstitutional practices. Defendant[] knew or should have known that as a direct and proximate consequence of the policies, practices and/or customs described herein, the constitutional rights of thousands of individuals, particularly Black and Latino individuals, would be violated. Despite this knowledge, and with deliberate indifference to and reckless disregard for the constitutional rights of such individuals, Defendant [City of Leeds] ha[s] implemented, enforced, encouraged, sanctioned and failed to rectify such policies, practices and/or customs.

(*Id.* ¶ 28).

The allegations specific to Cano-Diaz are stated as follows:

On or about the 21st day of February, 2012[,] Plaintiff Cecilia Cano-Diaz was driving through the City of Leeds, Alabama[,] and was stopped by an officer of the Leeds Police Department for allegedly crossing outside the fog line multiple times. She was asked for a driver's license and when she could not produce one, was arrested and incarcerated for some hours. She was charged with the offenses of driving without first obtaining a driver['s] license and "failure to maintain lane", but was required to post a bond for "Violation of Immigration Act". She has not been convicted of any of the offenses for which she was charged as of the date of filing hereof. Plaintiff's traffic stop was pretextual and was effected solely in order to harass or intimidate the Plaintiff because of her ethnicity, Hispanic, and improperly to enforce Alabama's

Immigration Act.

(*Id.* ¶ 21).

Based on these alleged facts, Cano-Diaz asserts five claims against the City of Leeds: Fourth Amendment violations brought by and through 42 U.S.C. § 1983 (Count I); Fourteenth Amendment Equal Protection Clause violations brought by and through 42 U.S.C. § 1983 (Count II); discrimination claims brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.* (Count III); claims for remedial relief predicated upon Defendants' past practices (Count IV); and claims for money damages pursuant to 42 U.S.C. § 1983 (Count V).

## II.  LEGAL STANDARDS

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47).  However at the same

6

time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.   ANALYSIS

The issues raised in this case have been thoroughly briefed.  (*See* Docs. 33, 38, 42; *see also* Docs. 30, 31, 43).[4]  Moreover, the court held an extensive hearing on the pending Motion and issues raised therein.  For the reasons that follow, the court concludes that the Motion is due to be granted.

### A.   Fourth Amendment Claim

In Count I of the First Amended Complaint, Cano-Diaz asserts that the City of Leeds violated her Fourth Amendment rights.[5]   She brings her Fourth Amendment claim by and through 42 U.S.C. § 1983.

The City of Leeds contends that Cano-Diaz's fails to state a claim under 42 U.S.C. § 1983 for any alleged violation of the Fourth Amendment.  More specifically, the City of Leeds argues that the Fourth Amendment claim is due to be dismissed

---

[4]  City of Leeds thoroughly develops the argument that Plaintiff has failed to comply with the court's specific repleader requirements and with the federal pleading standards generally. While the court agrees that Plaintiff's Amended Complaint, as drafted, contains certain deficiencies, the court has addressed its primary concerns by ordering that this case be severed into multiple lawsuits. (*See* Doc. 45).  Thus, the court focuses its analysis on the substantive issues raised in the Motion To Dismiss.

[5]  The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

under the *Younger* abstention doctrine to the extent that her underlying charges are pending, as alleged in her First Amended Complaint; alternatively, to the extent that she has already been convicted of the underlying charges, it argues that the claim is due to be dismissed under the *Heck* bar because she has not shown that the convictions have been invalidated.  The court agrees.

### 1.   Application of the *Younger* abstention doctrine

Cano-Diaz avers that she was pulled over by a City of Leeds police officer and cited with two offenses: driving without a driver's license and failure to maintain her lane.  (Doc. 29 ¶ 21).  She further avers that she "has not been convicted of any of the offenses for which she was charged as of the date of filing hereof."  (*Id.*).  Thus, the clear implication of Cano-Diaz's complaint is that her charges are still pending.

The City of Leeds rightly observes that a district court may properly abstain from exercising jurisdiction and avoid interfering with pending state-level proceedings based on the *Younger* abstention doctrine.  *See Younger v. Harris*, 401 U.S. 37 (1971).  The Supreme Court in *Younger* held that the "state criminal proceeding offered a sufficient forum for the plaintiff to raise his constitutional defense, abstained from hearing the plaintiff's claim and stated the general rule that a federal district court must refrain from enjoining pending criminal state court proceedings except under special circumstances."  *Green v. Jefferson Cnty Comm'n*,

563 F.3d 1243, 1250 (11th Cir. 2009); *see Perez v. Ledesma*, 401 U.S. 82, 85 (1971)

("The propriety of arrests and the admissibility of evidence in state criminal

prosecutions are ordinarily matters to be resolved by state tribunals, subject, of

course, to review by certiorari or appeal in this Court or, in a proper case, on federal

habeas corpus." (internal citation omitted)).

"In order to decide whether the federal proceeding would interfere with the

state proceeding, [the court] look[s] to the relief requested and the effect it would

have on the state proceedings.  The relief sought need not directly interfere with an

ongoing proceeding or terminate an ongoing proceeding in order for *Younger*

abstention to be required."  *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th

Cir. 2003) (citations omitted).  As the Eleventh Circuit has put it: "The question . . .

is threefold: first, do [the proceedings] constitute an ongoing state judicial

proceeding; second, do the proceedings implicate important state interests; and third,

is there an adequate opportunity in the state proceedings to raise constitutional

challenges."  *Id.* at 1274 (quotation omitted).

Looking to the relief requested by Cano-Diaz, the court finds that the three

elements are easily met based on the apparent pendency of the underlying state

proceedings concerning the charged traffic offenses.  Accordingly, this case presents

an appropriate occasion for the court to apply the *Younger* doctrine, which raises

ripeness as well as abstention concerns. *See Gilam v. Harris*, No. 4:11-cv-1005-VEH, 2012 WL 1568676, at *4 (N.D. Ala. Apr. 26, 2012) ("[Plaintiff] has not adequately shown how his federal lawsuit is fit for a judicial decision in light of the incompleteness of his criminal case. In particular, to proceed with evaluating [plaintiff]'s constitutional claims, the court would have to speculate as to the outcome of the state criminal proceedings against him and offer an impermissible advisory opinion about the merits of his federal case."); *id.* at *5 ("Because of the still pending nature of the state criminal case against [plaintiff], his request for a federal court to review it for constitutionally deficiencies is premature. Additionally, any hardship that [plaintiff] may suffer in withholding review is outweighed by the unfitness of this case for a judicial decision at this juncture."). Specifically, Cano-Diaz's Fourth Amendment challenge to the constitutionality of her stop can adequately be addressed in municipal court or in any appeal thereafter through the circuit court of the county. Accordingly, Cano-Diaz's Fourth Amendment claim is premature to the extent that it is still pending in state proceedings. Therefore, it is due to be dismissed without prejudice on this jurisdictional ground.

## 2.   Application of the *Heck* bar

Even if Cano-Diaz's underlying charges are not still pending as alleged,[6] they are still due to be dismissed.  The City of Leeds persuasively argues that, to the extent Cano-Diaz's underlying charges have resulted in convictions, they are due to be dismissed under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) because they are not ripe for adjudication.

The *Heck* bar is implicated when a plaintiff seeks damages[7] under § 1983 for alleged constitutional harms, such as Cano-Diaz's claim for an unlawful stop under the Fourth Amendment, brought by and through 42 U.S.C. § 1983.[8]  *See* 1 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 5:22 (2011) ("[T]he Supreme Court's 1994 decision in *Heck v. Humphrey* has deep implications

---

[6]  Despite the allegation in Cano-Diaz's complaint that she was "charged" but "not . . . convicted," she indicates in her briefing responsive to the Motion To Dismiss that her charge is not currently pending.  (*Compare* Doc. 29 ¶ 21, *with* Doc. 38 at 2 ("The Plaintiffs do not allege that any of the complaints with which they were charged are still pending.")).  In light of this ambiguity, the court analyzes Cano-Diaz's claim from both perspectives.

[7]  Although *Heck* involved a claim brought under 42 U.S.C. § 1983 for money damages, *Heck*'s holding has been extended to claims seeking declaratory or injunctive relief as well as money damages.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Abella v. Rubino*, 63 F. 3d 1063, 1066 (11th Cir. 1995).

[8]  Count I of Cano-Diaz's complaint alleges that the City of Leeds has "implemented, enforced, encouraged, and sanctioned a policy, practice and/or custom of stopping individuals without reasonable articulable suspicion of criminality required by the Fourth Amendment," (Doc. 29 ¶ 30), and further alleges that the City of Leeds police department "target[s] Latino individuals for illegal stops" (*id.* ¶ 33).

for those § 1983 damages actions that may implicate the validity of an *existing* criminal conviction." (emphasis in original) (footnote omitted)).   In *Heck*, the Supreme Court held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87 (italics in original; underline added) (footnotes omitted).

In *Heck*, therefore, "the Supreme Court held that § 1983 actions that necessarily call into question the validity of a conviction or sentence do not accrue until the plaintiff can demonstrate that the conviction or sentence has been reversed, expunged, or otherwise declared invalid by a tribunal authorized to make such a finding." *Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998) (citing *Heck*, 512 U.S. at 487).

Accordingly, if a plaintiff files a claim related to rulings that will likely be made in a pending or anticipated criminal trial, then "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal." *Id.* at 394; *see Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck*, 512 U.S. at 487.

As applied to a § 1983 claim for a Fourth Amendment search and seizure violation, the *Heck* bar would not necessarily be invoked in every case. For instance, the Eleventh Circuit has noted that "[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the validity of a conviction. As a result, *Heck* does not generally bar such claims." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing *Heck*, 512 U.S. at 487 n.7) (footnotes omitted). However, that scenario would present an exception to *Heck*'s general rule—an exception to be applied based on the particular facts of each case: "[N]ot all Fourth Amendment claims fit the exception to *Heck*, and courts 'must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted.'" *Vickers v. Donahue*, 137 Fed. App'x 285, 290 (11th Cir. 2005) (quoting

14

*Hughes*, 350 F.3d at 1160 n.2); *see also Weaver v. Geiger*, 294 Fed. App'x 529, 533 (11th Cir. 2008) ("We have previously held that [Fourth Amendment claims premised on invalid warrants] can be brought even without proof that the underlying conviction has been called into question.  However, we have also determined that *Heck* would still preclude those claims that 'if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense.'" (quoting *Hughes*, 350 F.3d at 1160 n.2)).

The facts of this case demonstrate that the *Heck* bar is properly invoked.  In view of the facts surrounding the traffic stop, as alleged by Cano-Diaz, the *Heck* bar is triggered because her Fourth Amendment claim, if successful, would necessarily implicate the validity of the underlying state charges.  More specifically, Cano-Diaz alleges that she was "was stopped by an officer of the Leeds Police Department for allegedly crossing outside the fog line multiple times."  (Doc. 29 ¶ 21).  She further alleges that the "traffic stop was <u>pretextual</u> and was <u>effected solely in order to harass or intimidate</u> the Plaintiff because of her ethnicity, Hispanic, and improperly to enforce Alabama's Immigration Act."  (*Id.*) (emphasis added).  Accordingly, her denial of any basis for the reason she was pulled over—allegedly, her failure to maintain her lane—implicates the validity of her failure-to-maintain-lane citation.  Additionally, if Cano-Diaz were to prevail on her claim that she was pulled over and

detained without the requisite probable cause or reasonable suspicion, the fruit of the poisonous tree doctrine would apply to invalidate or expunge the second offense she was charged with, driving without a license. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963) ("[T]his Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." (citing *Weeks v. United States*, 232 U.S. 383 (1913)). This is so because any evidence obtained during the stop that she was driving without a license would necessarily be excluded in light of the unlawful stop.[9]  *See id.*

Therefore, Cano-Diaz's Fourth Amendment claim in Count I is due to be dismissed under *Heck* because "a judgment in [her] favor on this claim would necessarily imply the invalidity of h[er] underlying convictions."  *Hawthorne v. Sheriff of Broward Cnty*, 212 Fed. App'x 943, 947 (11th Cir. 2007); *see also Tuff v. Wright*, No. CV 311-108, 2012 WL 1167729, at *3 (S.D. Ga. Mar. 15, 2012) (applying *Heck* to bar § 1983 claim for an alleged Fourth Amendment violation on the basis that the plaintiff's "§ 1983 claims . . . would imply that he was indicted

---

[9]  In this case, the City of Leeds police officer would not have discovered the evidence of Cano-Diaz driving without a license absent pulling her over and inquiring about the same. Thus, the independent-source doctrine and inevitable discovery rule that were cited as a concern in *Heck* have no applicability here. *Cf. Heck*, 512 U.S. at 487 n.7 (explaining that its holding would not *necessarily* preclude a Fourth Amendment claim of illegal search and seizure given doctrines such as independent source, inevitable discovery, and harmless error).

based purely on knowingly falsified information, which is tantamount to implying that his conviction was invalid."); *Spencer v. Deluca*, No. 3:10–cv–65–KAP, 2010 WL 2076912, at *2 (W.D. Pa. May 21, 2010) ("A claim that the arresting officer totally fabricated probable cause for an arrest which led to the discovery of the sole evidence [upon which the charge was based] is one that cannot accrue until the dismissal of the charges." (citing *Heck,* 512 U.S. at 486-87)).  Cano-Diaz's Fourth Amendment claim is not ripe under *Heck* because she has not pointed to a "conviction or sentence reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. at 487. Therefore, she does not have a cognizable § 1983 claim at this time for her alleged Fourth Amendment violation.

## B.    Fourteenth Amendment Claim

In Count II, Cano-Diaz asserts that the City of Leeds violated the Equal Protection Clause of the Fourteenth Amendment.  Like her Fourth Amendment claim, she brings her Fourteenth Amendment claim by and through 42 U.S.C. § 1983.  And, like her Fourth Amendment claim, her Fourteenth Amendment claim is likewise due to be dismissed under the *Younger* abstention doctrine to the extent her charges are still pending, and under *Heck* to the extent she has been convicted of those charges.

### 1.    Application of the *Younger* abstention doctrine

For the same reasons stated *supra* concerning her Fourth Amendment claim,

Cano-Diaz's Fourteenth Amendment claim for racial profiling is due to be dismissed

under the *Younger* abstention doctrine to the extent that any charges brought against

her due to the allegedly discriminatory and unlawful  stop are still pending.  *See*

*Younger,* 401 U.S. at 44; *31 Foster Children*, 329 F.3d at 1274-76.  In addition to the

general reasons stated above concerning Cano-Diaz's ability to address her

constitutional grievances before a state tribunal, a number of courts across the country

have considered the specific issue of whether *Younger* applies to Fourteenth

Amendment racial profiling claims and have concluded that abstention is appropriate.

(*See* Doc. 31 at 10-11 (citing cases)).[10]

---

[10]  For instance, in *Lee v. Ingram*, Civil Action No. 4:10–CV–604–Y, 2012 WL 369931
(N.D. Tex. Feb. 6, 2012), the court applied *Younger* abstention principles in dismissing a § 1983
claim that raised unlawful discrimination under the Fourteenth Amendment due to racial
profiling by police officers who were allegedly conducting selective traffic stops of black
motorists.  In *Lee*, the plaintiff had been stopped and detained allegedly due to racial profiling
and was issued three citations during the traffic stop, including "(1) evading arrest/detention with
a motor vehicle; (2) tampering/fabricating physical evidence with intent to impede its
availability; and (3) possession of a controlled substance, less than one gram." *Id.* at *1.  The
plaintiff then sought a court order in federal court to "stop profiling black drivers in Hood
County, order that further training be done on writing traffic tickets or on following the laws and
policies of law enforcement, and compensation for lost wages." *Id.* at *1.  The court concluded:
"Because Lee is the subject of a state prosecution on the charges made the basis of this
complaint, and because those state proceedings afford an adequate opportunity for Lee to raise
the challenges to his arrest and detention asserted here . . . Lee's claims under 42 U.S.C. § 1983
arising from his stop and detention, including his claims for injunctive or declaratory type relief,
must be dismissed." *Id.* at *1.

Accordingly, Cano-Diaz's Fourth Amendment claim will be dismissed without prejudice as premature to the extent that her underlying state charges are still pending.

### 2.   Application of the *Heck* bar

Just as the *Heck* bar applies to dismiss Cano-Diaz's Fourth Amendment claim, see analysis *supra*, it applies similarly to dismiss her Fourteenth Amendment claim to the extent her charges have resulted in a conviction.

In her Fourteenth Amendment claim, brought by and through 42 U.S.C. § 1983, Cano-Diaz asserts that "suspicionless stops have been and are predominantly conducted on Black and Latino or Hispanic individuals or those that have physical characteristics belonging to such races or ethnicities on the basis of racial and/or ethnic profiling." (Doc. 29 ¶ 36). She further contends that "[a]s a result, the police department policy, practice, and/or custom of suspicionless stops violate the Equal Protection Clause of the Fourteenth Amendment." (*Id.* ¶ 37). The facts specific to Cano-Diaz allege that she was pulled over, arrested, and incarcerated, based on a "pretextual" traffic stop that "was effected solely in order to harass or intimidate the Plaintiff because of her ethnicity, Hispanic." (*Id.* ¶ 21).

Applying *Heck,* the court must again analyze whether Cano-Diaz's § 1983 claim, if successful, will necessarily imply the invalidity of any outstanding conviction against her at the state or municipal level. *See Heck*, 512 U.S. at 486-87.

19

If so, the court must dismiss her claim, "unless [Cano-Diaz] can demonstrate that the conviction or sentence has already been invalidated." *Id.* Analysis of Cano-Diaz's Fourteenth Amendment racial profiling claim reaches an even clearer result than her Fourth Amendment claim. Consistent with the persuasive analysis and conclusion of numerous other courts (see Doc. 31 at 13 n.3 (citing multiple district court cases)), the court finds that, if Cano-Diaz prevailed on her § 1983 claim for Equal Protection violations under the Fourteenth Amendment, it would "necessarily imply" the invalidity of any outstanding conviction against her at the state or municipal level for the offenses charged during her traffic stop. More specifically, if Cano-Diaz proved that the City of Leeds officer who pulled her over did so for purely discriminatory motives based on her race or ethnicity, such proof of the illegality of the stop would invalidate any convictions resulting therefrom. *See, e.g., Cook v. Layton*, 299 Fed. App'x 173, 174 (3d Cir. 2008) ("*Heck* . . . applies to allegations of a violation of equal protection, because a successful claim of racially discriminatory enforcement of the law would invalidate the resulting conviction and sentence."); *Sanders v. Fayetteville City Police Dep't*, 160 Fed. App'x 542, 543 (8th Cir. 2005) (affirming dismissal pursuant to *Heck* of a § 1983 claim arising from an alleged racially motivated vehicle stop from which a conviction resulted); *Gibson v. Superintendent of N.J. Dep't of Law*, 411 F.3d 427, 441 (3d Cir. 2005) (holding that the *Heck* bar was

applicable "[b]ecause a successful claim of selective enforcement under the Fourteenth Amendment equal protection clause would have necessarily invalidated . . . [the underlying] conviction . . .").[11]

Moreover, Cano-Diaz has not shown that her "conviction . . . [has been] reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Accordingly, Cano-Diaz's Fourteenth Amendment claim in Count II is not ripe under *Heck* and is due to be dismissed under *Heck* to the extent that her pending underlying state charges have become convictions.

## C.    Title VI Claim

Cano-Diaz also asserts, in Count III, that the City of Leeds unlawfully discriminated against her in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.*[12]   Specifically, she pleaded that the law enforcement

---

[11]   The Third Circuit's *Gibson* decision was overruled in part on other grounds by *Dique v. New Jersey State Police,* 603 F.3d 181, 183 (3d Cir. 2010) ("We believe, however, that the Supreme Court's decision in *Wallace v. Kato,* 549 U.S. 384 (2007), which clarified the *Heck* rule [concerning the statute of limitations for a selective-enforcement claim], extends to Fourteenth Amendment selective-enforcement claims and thus overrides our decision in *Gibson*.").

[12]   Title VI generally provides that a program or activity receiving federal financial assistance shall not discriminate on the basis of race, color, or national origin.  *See* 42 U.S.C. § 2000d, *et seq.* Cano-Diaz alleges that the "laws (sic) enforcement activities described in this amended complaint have been funded, in part, with federal funds."  (Am. Complt., Doc. 29 ¶ 42).

activities "had a *disparate impact* on minorities, particularly Blacks and Latinos." (Am. Compl., Doc. 29 ¶ 43) (emphasis added).  The City of Leeds contends that Cano-Diaz fails to state a claim under Title VI because she is not entitled to a private right of action to enforce disparate impact treatment.  The court agrees.

It is clear under *Alexander v. Sandoval*, 532 U.S. 275 (2001), that there is no private right of action to enforce disparate impact regulations.  *Alexander*, 532 U.S. at 285 (holding that there is no private right of action to enforce Title VI disparate impact regulations); *see also* <u>Title VI Legal Manual</u>, U.S. Dep't of Justice, http://www.justice.gov/crt/about/cor/coord/vimanual.php (Jan. 11, 2001) (recognizing that "*Sandoval* foreclosed private judicial enforcement of Title VI disparate impact regulations").  Therefore, Cano-Diaz's Title VI claim is due to be dismissed with prejudice because it is not cognizable under the law.

### D.    Damages Claims

In Counts IV and V, Cano-Diaz asserts claims for remedial relief predicated upon the Defendant's past unconstitutional practices and claims for money damages pursuant to 42 U.S.C. § 1983.  Neither of these claims can stand without a cognizable underlying § 1983 claim to support them.  *See generally Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights

elsewhere conferred.'" (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

### E.    Class Action Allegations

Likewise, because Cano-Diaz has not stated a maintainable cause of action on any of her alleged claims, the putative class allegations necessarily must fail.

## IV.   CONCLUSION

In sum, the court concludes as follows:

1.    Plaintiff's Fourth and Fourteenth Amendment claims, brought by and through 42 U.S.C. § 1983 (Counts I and II) are due to be dismissed under the *Younger* abstention doctrine to the extent that the underlying state charges are still pending as alleged.  Alternatively, Counts I and II are due to be dismissed to the extent that the underlying charges have become convictions because they are not ripe—and thus "not cognizable"—under *Heck.  Heck*, 512 U.S. at 487 ("A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is <u>not cognizable</u> under § 1983." (italics in original; underline added). Under either reasoning, Counts I and II are due to be dismissed without prejudice.

2    Plaintiff's Title VI claim (Count III) is due to be dismissed with prejudice because it is not a cognizable claim.

3.    Because Plaintiff has not stated a maintainable cause of action on any of her

substantive claims, Plaintiff's claims for remedial relief (Count IV) and for damages under § 1983 (Count V) are due to be dismissed.

4.      Because Plaintiff has not stated a maintainable cause of action on any of her alleged claims, the putative class allegations necessarily must fail.

With no remaining claims, this case is due to be dismissed.  A separate order dismissing the case will be entered.

**DONE** and **ORDERED** this the 1st day of August, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge